IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | Case No: 3:25-mj-00004-KFR |
|---|---|
| Plaintiff, | |
| vs. | |
| ROBERT WILLIAM SOLESKY | |
| Defendant. | |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A CRIMINAL COMPLAINT**

I, RONY HARDEN JR., being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND TASK FORCE OFFICER BACKGROUND**

1. I make this affidavit in support of an application for a criminal complaint and arrest warrant for **ROBERT WILLIAM SOLESKY** (hereinafter "SUBJECT"). An investigation has revealed that there is probable cause to believe that the SUBJECT has committed violations of Title 49 United States Code § 46504 (interference with flight crew members and attendants).

2. I am familiar with the information contained in this affidavit based upon the investigation I have conducted, in conjunction with other federal, state, and local law enforcement officials, which has included exchanging information with law enforcement officers and others; reviewing notes, reports, database records and other information

Jan 06, 2025

acquired during this investigation; and reviewing evidence obtained therefrom; and interviewing witnesses.

3. Because I submit this affidavit for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me or the government. I have only included those facts necessary to establish probable cause to believe that SUBJECT has committed a violation of 49 U.S.C. § 46504.

4. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI). I have been a SA with the FBI for approximately one year. I am currently assigned to the Counterterrorism (CT1) squad and the Joint Terrorism Task Force (JTTF) in the FBI Anchorage Field Office. During my time with the FBI, I have participated in investigations involving domestic terrorism, international terrorism, and child exploitation and sex trafficking offenses. Prior to joining the FBI, I was a sworn law enforcement officer with Federal Protective Service (FPS) for five years, where I was assigned to provide physical security and law enforcement response to federal properties in the District of Alaska. In my current capacity I also investigate violations of federal law occurring in the Special Aircraft Jurisdiction of the United States.

## RELEVANT STATUTES AND REGULATIONS

5. The relevant statutory authority and terms used in this affidavit and its attachments are described and defined below.

    a. 49 U.S.C. § 46504, states: "An individual on an aircraft in the special aircraft jurisdiction of the United States who, by assaulting or intimidating a flight crew

Jan 06, 2025

3:25-mj-00004-KFR  2
Case 3:25-mj-00004-KFR   Document 1-1   Filed 01/06/25   Page 2 of 7

member or flight attendant of the aircraft, interferes with the performance of the duties of the member or attendant or lessens the ability of the member or attendant to perform those duties, or attempts or conspires to do such an act, shall be fined under title 18, imprisoned for not more than 20 years, or both. However, if a dangerous weapon is used in assaulting or intimidating the member or attendant, the individual shall be imprisoned for any term of years or for life."

## PROBABLE CAUSE

4. On January 5, 2025, FBI Anchorage Field Office received a call at approximately 01:50 PM from the Anchorage Airport Police Department (AAPD), reporting that American Airlines flight 167 with registered aircraft number AA8LP, from John F. Kennedy International Airport (JFK), NY diverted from Narita Airport Tokyo, Japan to the Ted Stevens Anchorage International Airport (ANC) because of a disruptive passenger. The flight was expected to land at approximately 02:30 PM. At the time of the call AAPD had limited information but there was an unknown subject that the flight crew wanted arrested.

5. At approximately 2:30pm on Sunday January 5, 2025, I responded to the Ted Stevens International Airport with SA Yarborough. Upon arrival, we boarded flight 167 at the North Terminal. There were no active jetways available for the flight, so a stairway was deployed to the cabin door.

6. Once the aircraft was accessible, AAPD officers boarded the aircraft to detain the SUBJECT of the complaint ROBERT SOLESKY and escorted him to the North Terminal. A federal air marshal assisted SOLESKY's wife into the terminal as well

at her request. After being escorted off the plane, AAPD administered the SUBJECT a Breath Alcohol Content test (BrAC) at approximately 02:30 PM. The test reported SUBJECT had a BrAC of 0.219.

7. Following AAPD and the Air Marshal's access to the aircraft as described above, the FBI entered the aircraft to conduct witness interviews with flight crew and passengers, including family members of the SUBJECT.

8. During the interview of the first-class flight attendant, G.B., he stated SUBJECT was sitting in row four. The flight had been in air for approximately eight hours and still had approximately six hours to go before arriving at their destination when G.B., approached the SUBJECT after observing him struggle to access the restroom in the first class cabin. Due to his level of intoxication, SUBJECT had difficulty both entering and exiting the restroom. Once inside the restroom, SUBJECT began banging and kicking on the restroom door, attempting to push the door open rather than pull to exit. The banging on the door was loud enough that the flight crew could hear the banging inside the cockpit, and G.B needed to assist the SUBJECT in exiting the restroom due to his level of intoxication. At this point, G.B. told the SUBJECT that his level of disruption was disturbing both the cockpit crew and other passengers and that he needed to remain seated and calm down.

9. After being assisted out of the restroom, the SUBJECT aggressively grabbed the jacket lapels of G.B, who stated that while he (G.B.) did not feel threatened, he was increasingly concerned because the SUBJECT would not abide by instructions from air crew.

Jan 06, 2025

10. G.B. and another flight attendant repeatedly instructed the SUBJECT to remain at his seat and that due to the concerns regarding the SUBJECT's behavior and proximity to the cockpit, flight attendants instructed the SUBJECT that he could no longer use the first-class restroom. Despite these clear instructions the SUBJECT refused to comply with the directions of flight crew members and made repeated attempts to access the front the aircraft.

11. The FBI also interviewed the Captain of the aircraft. During the interview, the Captain stated that he had been notified by the first-class flight attendant, G.B., of a disturbance with an intoxicated passenger, SUBJECT. As a result of the SUBJECT's interference with the duties of the flight crew, the Captain left the cockpit to discuss the SUBJECT's behavior with the SUBJECT's wife. According to the Captain, he told the SUBJECT's wife that if the SUBJECT's behavior could not be controlled, the flight would be diverted to remove the SUBEJCT from the aircraft due to his interference with the duties of the air crew and safety concerns. According to the Captain, the SUBJECT's wife agreed that the flight needed to be diverted in order to remove the SUBJECT from the aircraft as a result of his behavior.

12. Throughout the flight, SUBJECT repeatedly continued to try and come to the front of the plane even after being told to stay in his seat or use the rear lavatories. When SUBJECT repeatedly went to the front, his family had to restrain him and try to bring him back to his seat. Once SUBJECT continued to disregard instructions given by the flight crew, the Captain made the decision to divert the plane to the closest airport which was Anchorage.

Jan 06, 2025

13. Witness and attendant, B.J., explained that she finally was able to get SUBJECT to his seat on one occasion but instead of staying and resting as instructed, he insisted on getting up and going back to the same restroom at the front of the aircraft that he had previously been instructed not to use. B.J. stayed with the SUBJECT and assisted him with the operation of the door to the restroom but he was so intoxicated, he wasn't understanding her instructions. B.J. did not fear for her own safety at this point but she was concerned for the safety of others.

14. During the interview with SUBJECT's spouse, she stated that her husband's cousins were on board and tried assist in restraining the SUBJECT to no avail. According to the SUBJECT's wife, the SUBJECT had aggressively grabbed both he and the flight attendant G.B. At one point, the SUBJECT's wife stated that she was told that the SUBJECT went to the cockpit and was knocking on the door while she was asleep. The SUBJECT's wife told the FBI that she did not feel capable of controlling her husband's behavior even with the assistance of other family members. She recalled the flight attendants giving repeated warnings to her husband. She recalled them being nice and respectful to her husband when interacting with him, however he would not comply with any of their instructions.

15. SUBJECT was advised by AAPD of his Miranda Rights. After being provided the advised of rights, SUBJECT stated that he would continue to communicate with the interviewing agents. SUBJECT confirmed grabbing the jacket of flight attendant G.B. but stated that he did not feel it was an issue and, "thought it was a kind gesture to say thanks man." SUBJECT only recalled having a bloody mary with two

bottles of liquor. According to the SUBJECT he is very healthy, works out often, and is not taking any medications.

## CONCLUSION

22. Based upon the information above, your affiant submits that there is probable cause to believe that ROBERT WILLIAM SOLESKY, interfered with the performance of the duties of the member or attendant or lessens the ability of the member or attendant to perform those duties by assaulting and intimidating a flight crew member or flight attendant of the aircraft, in violation of 49 U.S.C. § 46504.

_____
RONY HARDEN JR.
Special Agent, FBI

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed.R.Crim. P. 4.1 and 4(d) on this ___ day of _____, 2025.

_____
HON. KYLE F. REARDON
United States Magistrate Judge
District of Alaska

January 06, 2025